**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

WENDY P. DRAKE,
        Plaintiff

      v.

CHIEF JUDGE OF THE CIRCUIT
COURT OF COOK COUNTY,
        Defendant

No. 23 CV 690

Judge Jeremy C. Daniel

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant Chief Judge of the Circuit Court of Cook County's motion for summary judgment on Plaintiff Wendy Drake's claims under Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e *et seq.* (R. 99.) Specifically, the defendant asserts he is entitled to summary judgment because the plaintiff cannot show that (1) she exhausted her administrative remedies, (2) the defendant discriminated against her on the basis of race or gender, and (3) her retaliation claim was not barred by *res judicata.* (*Id.*) For the reasons below, the motion is granted in part and denied in part.

**BACKGROUND**

The following facts are taken from the parties' Local Rule 56.1 submissions,[1] the materials cited therein, and other aspects of the record in this case.

---

[1] Defendant's Statement of Undisputed Material Facts ("Def. SOF") (R. 100); Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl. Resp. to Def. SOF") (R. 111); Plaintiff's Statement of Additional Facts Pursuant to Local Rule 56.1(B)(3)(c) ("Pl. SOF") (R. 114); Defendant's Response to Plaintiff's Statement of Additional Facts ("Def. Resp. to Pl. SOF") (R. 135.)

### I. THE PLAINTIFF'S TENURE AT CIRCUIT COURT OF COOK COUNTY

The plaintiff, a Black woman, began her employment with the Circuit Court of Cook County in the Adult Probation Department (APD) in 1994. (Pl. Resp. to Def. SOF ¶ 1.)[2] In 2014, the plaintiff became a supervisor with APD. (*Id.* ¶ 3.) From 2019 to 2022, the plaintiff was assigned to the training division as a field services training supervisor. (*Id.*) She continued to serve as a sworn supervisor during this period. (*Id.* ¶ 5.) In 2020, she became a member of the union for sworn supervisors, the Illinois Fraternal Order of Police Labor Council (FOP), governed by the terms of a collective bargaining agreement. (*Id.* ¶ 4.) The plaintiff received one written disciplinary action between 1994 and 2020, in September 2020. (Def. Resp. to Pl. SOF ¶ 12.)

The plaintiff's duties in the training division included attending trainings, providing training, and ensuring training compliance for newly hired probation officers (POs). (Pl. Resp. to Def. SOF ¶ 6.) These trainings involved field services and control tactics training, which were necessary for POs because these were essential functions of their job. (*Id.*)

### II. TRAINING DIVISION INVESTIGATIONS

#### A. Timekeeping and Compensatory Time

In 2019, Katherine Verrant, Co-Acting Director of Human Resources and Labor Employment Relations Counsel, investigated the training division regarding proper timekeeping and cost reimbursement. (*Id.* ¶ 7.) This investigation resulted in

---

[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

findings of falsified travel reimbursement requests and improper timekeeping, including the plaintiff's accrual of compensatory time. (*Id.* ¶ 8.)

### B.    Travel Expense Vouchers

In February and March 2020, the plaintiff submitted travel expense vouchers with original receipts to her supervisor, Delores Johnson, then-Director of Training documenting purchases eligible for reimbursement. (*Id.* ¶ 10.) These vouchers were then submitted to Michael Rohan, Director of the Finance Department. (*Id.*) Rohan determined that the vouchers included items that were ineligible for reimbursement under APD policy and submitted these findings to Human Resources. (*Id.* ¶ 11.) Verrant and Camela Gardner, Verrant's co-director, investigated these vouchers, and in September 2020, issued a memorandum to Laura Kelly, Human Resources Administrator for the Office of the Chief Judge, with those findings. (*Id.* ¶ 12.)

When assessing discipline for an employee, the defendant generally may issue counseling or a verbal warning prior to issuing a written reprimand to an employee. (Def. Resp. to Pl. SOF ¶ 16.) A written reprimand can result in an inability to apply for a promotion for twelve to eighteen months. (*Id.* ¶ 15.) Here, the report concluded that the plaintiff should be issued a written reprimand for her violation of APD voucher reimbursement policy. (Pl. Resp. to Def. SOF ¶ 13.) This report also stated that "it is a point of contention with FOP that [the plaintiff] does not supervise employees in the same volume or manner as other FOP supervisors." (*Id.* ¶ 14.) Verrant and Gardner recommended the plaintiff's transfer to a different division or increase her responsibility with additional caseload officers. (*Id.*) The plaintiff was

3

issued a written reprimand in response to Verrant's memorandum in October 2020. (*Id.* ¶ 15.)

### III.    TRAINING BACKLOGS

In late 2020, Megan Volker, Chief Probation Officer of the APD, determined that POs were not receiving field services and control tactics training. (*Id.* ¶ 16.) Volker reached out to the training division regarding the need for this training. (*Id.* ¶ 17.) The parties dispute two facts related to these alleged backlogs. First, the plaintiff disputes that there was a backlog of training, as she was consistently training POs. (*Id.* ¶ 16; R. 114-17 ¶¶ 4–6.) Second, she disputes the defendants' assertion that she never responded to these requests for increased training. (R. 114-17 ¶¶ 4–6; Pl. Resp. to Def. SOF ¶¶ 18–19.)

### IV.    APPLICATION FOR ASSISTANT DIRECTOR OF TRAINING

In August 2021, the APD posted an opening for the position of Assistant Director of Training. (Pl. Resp. to Def. SOF ¶ 20.) The Assistant Director position is a Grade 20 paygrade, non-union position. (*Id.* ¶ 21.) The stated qualifications for the position are excellent communication skills, the ability to develop and deliver training documents, and high integrity and professionalism. (*Id.*) The plaintiff applied to the position at the end of August or beginning of September of that year. (*Id.* ¶ 22.) The APD interviewed four candidates, including the plaintiff. (*Id.* ¶ 23.) The interviews took place in mid-September 2021 with an interview panel consisting of Johnson, Verrant, and Gardner. (*Id.* ¶ 24.) Verrant is a White woman, and Gardner and Johnson are Black women. (*Id.*) Following the interview, Johnson recommended the plaintiff for the position, but Gardner and Verrant did not. (*Id.* ¶¶ 25–26.)

No candidate was offered the position, and the position was removed. (*Id.* ¶ 29.) When it was reposted in July 2022, candidate Julie Castellanos was eventually selected in September 2022. (*Id.* ¶ 30.)

## V.    DIRECTOR OF TRAINING POSITION

In December 2021, Gardner interviewed Christopher Devlin (who is male and not Black), a supervisor in APD, for a leadership position after he contacted Volker and Verrant regarding the need for leadership in the training division. (*Id.* ¶¶ 31–32.) In January 2022, Volker interviewed him regarding his interest in the training division. (*Id.* ¶ 33.) Volker decided to temporarily assign him to the Assistant Director position with no change to his title or pay and with no formal promotion. (*Id.* ¶¶ 33–34.) This was a six-month temporary assignment. (*Id.* ¶ 34.)

Separately, in February 2022, the plaintiff met with Volker and Ronnie Woodfork, Volker's assistant chief, at the plaintiff's request to discuss the plaintiff's work assignments. (*Id.* ¶ 35.) In this meeting, the plaintiff said she felt undervalued and underappreciated. (*Id.* ¶ 36.) She also said she would no longer perform training for the APD.[3] (*Id.*; *see also* R. 100-1 at 40.) In response, Volker told the plaintiff that she would be assigned additional POs to supervise so that her workload would be consistent with that of other supervisors in the APD. (Pl. Resp. to Def. SOF ¶ 38.) The plaintiff also expressed to Volker and Woodfork her interest in being promoted

---

[3] In the plaintiff's response to the defendant's Rule 56.1 Statement of Facts, Paragraph 38, she states that she did not say she would refuse to perform training duties, citing her declaration. (R. 114-17.) The declaration does not support this assertion. The only reference to the February 2022 meeting states that the plaintiff sought to be placed in the Director of Training position but could not be because the Director of Training position would need to be posted first. (*Id.* ¶ 11.)

to the Director of Training position. (R. 114-17 ¶ 11.) Volker responded that the position would first need to be posted. (*Id.*) The defendant disputes that the plaintiff expressed this interest. (Pl. Resp. to Def. SOF ¶ 41.) Volker later promoted Devlin to the Director of Training position in May 2022. (*Id.* ¶ 40.)

## VI. EEOC CHARGE, IDHR CHARGE, AND THIS CASE

In October 2022, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (*Id.* ¶ 42.) The defendant received notice of the charge in November 2022. (*Id.*) The charge stated:

> I began my employment with Respondent on or about September 24, 1994. My most recent position was Supervisor. During my employment, I was passed over for a promotion to the Director of Training position, whereas a less qualified male, non-black person was promoted in the Director of Training position. I complained to Respondent. Subsequently, I was assigned more staff. I believe I was discriminated against because of my sex, female, my race, Black, and in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.* ¶ 42; *see also generally* R. 100-7.)

The plaintiff filed the instant lawsuit on February 2, 2023, bringing claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964. (R. 1; *see* 42 U.S.C. §§ 2000e *et seq.*) The lawsuit concerns the defendant's alleged discrimination in his failure to promote the plaintiff to the positions of Director of Training and Assistant Director of Training. (*Id.*)

In February 2023, the plaintiff filed a charge of discrimination with the Illinois Department of Human Rights, adding allegations that the defendant retaliated and discriminated against her on the basis of race and gender in its failure to promote her

6

to the Assistant Director of Training and the Director of Training position. (Pl. Resp. to Def. SOF ¶ 43; *see also generally* R. 100-8.) This charge does not relate to the defendant's hiring of Julie Castellanos to the Assistant Director position in September 2022. (Pl. Resp. to Def. SOF ¶ 44.)

**LEGAL STANDARD**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court draws all inferences in the light most favorable to the nonmoving party. *Id.* at 255. However, the nonmoving party cannot rely on mere conjecture or speculation to manufacture a genuine issue of material fact. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

**ANALYSIS**

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The defendant first argues that the plaintiff failed to exhaust her administrative remedies. (R. 99 at 5–6.) The plaintiff did not respond to this argument in her response brief. (*See* R. 112.)

Employees may bring Title VII employment discrimination claims in federal court only after they have timely exhausted their administrative remedies. *See, e.g.*, *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 400 (7th Cir. 2019). To exhaust a claim, a plaintiff must timely file a charge of discrimination with the EEOC. *Id.* The

7

EEOC charge limits the scope of subsequent civil litigation in federal court. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). Generally, a plaintiff who has filed an EEOC charge can only bring claims under Title VII that were included in the original charge. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019) (citation omitted).

The plaintiff's initial EEOC charge from October 25, 2022, concerns the defendant's alleged failure to promote the plaintiff to the Director of Training position, but it does not concern the Assistant Director of Training position. (Pl. Resp. to Def. SOF ¶ 42.) She filed a second EEOC charge regarding the denial of the promotion to the Assistant Director of Training position on February 16, 2023. (Def. SOF ¶ 43.)

The defendant is correct that the plaintiff failed to exhaust her administrative remedies on her claims for retaliation and discrimination as to the Assistant Director of Training position. The parties do not appear to dispute that the initial EEOC charge did not mention the Assistant Director position, so the scope of the litigation based on that charge is limited only to her non-promotion to the Director of Training position. *Reynolds*, 737 F.3d at 1099. Further, the supplemental charge was not timely. A plaintiff must file a charge within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The plaintiff was allegedly denied the promotion to the Assistant Director position on January 31, 2022, which is more than 300 days before the second EEOC charge filed on February 16, 2023.

Accordingly, the Court grants the defendants' motion for summary judgment on the plaintiff's Counts I and II as to the Assistant Director of Training position.

## II.     RES JUDICATA

The defendant argues that the doctrine of *res judicata* bars the plaintiff's retaliation claim (Count III). (*See generally* R. 141.) *Res judicata* bars a claim that was "litigated or could have been litigated in a previous action when three requirements are met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016).

The plaintiff brought this lawsuit in 2023, alleging discrimination and retaliation based on Title VII ("*Drake I*"), and she later brought a lawsuit against the defendant in 2024, alleging Title VII retaliation only ("*Drake II*"). (R. 1); *see generally Drake v. Chief Judge of the Cir. Ct. of Cook Cnty.*, No. 24-cv-4607 (N.D. Ill. Jun. 3, 2024). The parties do not appear to dispute that the plaintiff brought retaliation claims against the defendant in both actions. They do, however, diverge on whether there were an identity of causes of action and a final judgment on the merits.

### A.     Identity of Causes of Action

"A claim has 'identity with a previously litigated matter if it emerges from the same core of operative facts as that earlier action.'" *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (citing *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995)). When assessing identity of claims, the Seventh Circuit has "held that courts 'should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and

9

the respective factual backgrounds.'" *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) (citing *Burlington N.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990)).

The defendant points to a number of paragraphs in the plaintiff's complaints and highlights identical and nearly identical statements in those complaints. (R. 141 at 4.) Specifically, the defendant argues that both *Drake I* and *Drake II* concern retaliation as shown by her lack of promotion and written reprimand. (*Id.*) The plaintiff attempts to differentiate the two complaints, citing (1) retaliation in the form of an eighteen-month promotional bar asserted in *Drake II* but not in *Drake I*, (2) retaliation in the form of an increase in staffing assigned to her asserted in *Drake I* but not *Drake II*, and (3) retaliation based on her EEOC charge and *Drake I*'s filing. (*See generally* R. 151.)

The plaintiff cites *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), for the proposition that injuries that accrue after the filing of the first lawsuit that comprise a new cause of action cannot be barred by *res judicata. Id.* at 327; (R. 151 at 3–5.) But the plaintiff conflates injuries that arise after the first lawsuit and injuries that arise after the period contemplated by the first lawsuit; *Lawlor* applies only to the former. The plaintiff filed *Drake I* in February 2023. (*See generally* R. 1.) The written reprimand and eighteen-month promotional bar are alleged to have occurred in January 2023. *See* Compl., ECF No. 1 ¶¶ 37–38, *Drake II* (N.D. Ill. Jun. 3, 2024). She entered her EEOC charge in October 2022, and the defendant was given notice

10

of it in November 2022. (Pl. Resp. to Def. SOF ¶ 42.) The injuries alleged in *Drake II* thus did not accrue after *Drake I* was filed.

Finding *Lawlor* inapposite, the Court assesses whether the claims in *Drake I* and *Drake II* arise from the "same core of operative facts[.]" *Highway J Citizens Grp.*, 456 F.3d at 741. Considering "the totality of the claims," the Court holds that they do. The plaintiff alleges that she took certain protected actions and was reprimanded and denied promotion(s). These claims thus arise out of facts "related in time, space, origin, and motivation," and "the underlying transaction[s,]" which is the denial of promotion and the written reprimand, "[are] identical." *Hayes v. City of Chicago*, 670 F.3d 810, 814 (7th Cir. 2012); *see also Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 945 (7th Cir. 1981) ("[R]es judicata operates to bar litigation of matters that should have been raised in the prior proceeding. The prior judgment is conclusive . . . as to every ground of recovery or defense which might have been presented.").

### B. Finality of Judgment

The parties stipulated to dismissal with prejudice in *Drake II*. *See* Joint Stipulation of Dismissal, *Drake II*, No. 24-cv-4607 (N.D. Ill. Sep. 12, 2025), ECF No. 54. The defendant argues that a stipulation of dismissal with prejudice constitutes a final judgment on the merits. (R. 141 at 3.) Generally, this is correct. *Brooks-Ngwenya v. Indianapolis Pub. Schs.*, 564 F.3d 804, 809 (7th Cir. 2009) ("When the parties settled [a previous] suit, they stipulated to a dismissal with prejudice. Such a dismissal is a final judgment for purposes of claim preclusion . . . .") This is based on which case reaches judgment first, not which was filed first. *Blair v. Equifax Check*

11

*Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) (citing *Davis v. Chicago*, 53 F.3d 801 (7th Cir.1995)) ("When the cases proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata).").

The plaintiff argues that the stipulation did not indicate that the "claims in *Drake I* (then pending and addressing a different set of allegations and timeframe) were waived or extinguished," and so could not be preclusive of the *Drake I* claims. (R. 151 at 6–7.) She cites *CFE Group, LLC v. Firstmerit Bank, N.A.*, 809 F.3d 346, 351 (7th Cir. 2015), in support. However, *CFE Group* found that a claim was not precluded because the previous claim was dismissed without prejudice, not with prejudice, so it is inapposite. *Id.*

The plaintiff also argues that she took a strategic approach to "dismiss duplicate or overlapping cases while preserving claims that rest on separate facts or a different accrual period." (R. 151 at 7.) However, the Court has already found that the claims do not rest on separate facts or a different accrual period. And the plaintiff's citation to *Green v. Illinois Department of Transportation*, 609 F. Supp. 1021, 1024 (N.D. Ill. 1985), does not lend credence to this approach. That court found that there was no claim preclusion because, like in *Lawlor*, the newly asserted claim rested on facts that accrued after the first lawsuit's filing. *Id.; see also Lawlor*, 349 U.S. at 327.

The Court accordingly grants the defendant's motion for summary judgment on Count III.

### III.    RACE AND GENDER DISCRIMINATION

The defendant seeks summary judgment on the plaintiff's race and gender discrimination claim under Title VII (Counts I and II) as to the Director of Training position. Under Title VII, a plaintiff establishes a *prima facie* showing of failure to promote by demonstrating that "(1) he is a member of a protected class, (2) he was qualified for the position sought, (3) he was rejected for the position, and (4) someone outside the protected class who was 'not better qualified' was hired instead." *Barnes v. Bd. of Trs. of the Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020) (citing *Riley v. Elkhart Comm. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016)).

### A.    Applicable Standard

Though not a factual dispute, the parties dispute the correct legal standard for evaluating the plaintiff's failure to promote claim; the defendant applied the *prima facie* element of the *McDonnell Douglas* framework for general discrimination claims under Title VII, while the plaintiff argues that the failure to promote framework from *Barnes* is the applicable legal standard. *See Barnes*, 946 F.3d at 389; (R. 99 at 7; R. 112 at 4). Without citation to authority, the plaintiff seeks denial of the defendant's summary judgment motion because it did not employ the failure to promote standard. (R. 112 at 2.) The Court will assess the plaintiff's non-promotion using the *Barnes prima facie* standard but notes that, because the failure to promote an individual is one type of adverse employment action, the two standards are identical inquiries for all intents and purposes.

The failure to promote framework has been laid out. For a general discrimination claim, a plaintiff must show that (1) he is a member of a protected

13

class; (2) his job performance met the defendant's legitimate job expectations; (3) the plaintiff was subjected to adverse employment action; and (4) the defendant treated a similarly situated individual not in the protected class more favorably. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (citing *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1104 n.1 (7th Cir. 2012)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Both tests originate from the burden-shifting framework in *McDonnell Douglas*, and *Barnes* is simply a specific application of that framework. A plaintiff's qualification for a promotion is a specific way of meeting the employer's legitimate expectations. A plaintiff's rejection from that position is analogous to an adverse employment action. And the similarly situated individual who was hired instead is analogous to the person not in the protected class who was treated more favorably. The Court thus declines to discount the defendant's arguments entirely because of subtle differences in the applicable standard.

### B. *Prima Facie* Case

The parties do not dispute that the plaintiff is a member of a protected class as a Black woman. (Pl. Resp. to Def. SOF ¶ 1; Def. Resp. to Pl. SOF ¶ 2.) The parties dispute whether the plaintiff was qualified for the promotion, whether her lack of promotion constituted an adverse employment action, and whether the defendant treated a similarly situated individual more favorably. (R. 99 at 7–11.)

The Court finds that there is a genuine dispute of material fact as to whether the plaintiff was qualified for the Director position. The defendant argues that the plaintiff was not qualified because she had been unresponsive to training requests

14

and because she had documented disciplinary issues regarding her travel vouchers. (*Id.* at 3–4; 7–8.) The defendant also argues that Devlin's performance, including taking on requests for training that the plaintiff refused, as well as communication skills and experience, were qualifications for his promotion that the plaintiff did not exhibit. (*Id.* at 10.) However, the plaintiff provides evidence that she had been part of the training department for a longer period than Devlin, which is evidence that she was likewise qualified. (R. 112 at 7.) The parties also dispute whether the plaintiff refused Volker's requests for training assistance in 2021. (Pl. Resp. to Def. SOF ¶ 17–19.) The length of the plaintiff's tenure and her level of responsibility are material facts that speak to her qualifications as compared to Devlin. A reasonable jury could find that it is not entirely obvious that Devlin should have been awarded the role over the plaintiff and that there is at least some level of qualification for the role that the plaintiff held. Accordingly, the motion for summary judgment on Counts I and II as to the Director of Training position is denied.

### IV. PUNITIVE DAMAGES AND INJUNCTIVE RELIEF

The parties agree that Title VII does not permit punitive damages against the defendant. (*See* R. 99 at 14; R. 112 at 11.) Because the plaintiff explicitly waives her claim for punitive damages, (R. 112 at 11), the Court holds that, to the extent the plaintiff was seeking them, punitive damages should not be awarded to the plaintiff in this action, should damages be considered.

As to injunctive relief, the defendant argues that the plaintiff lacks standing because she has not demonstrated that she is in immediate danger of sustaining some direct injury (R. 99 at 14), and she forfeited her request for injunctive relief because

15

she did not address the argument in her response brief, (R. 135 at 2–3). Standing is an element of subject matter jurisdiction and speaks to this Court's ability to hear the case or the claim. But determining standing does not rest on the party's rights or interests, and a party cannot forfeit standing. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

As to the merits of the argument, the Court agrees that the plaintiff lacks standing to seek injunctive relief. Standing requires, in short, (1) an injury, whether actual or imminent, (2) causation between the defendant's action and the plaintiff's injury, and (3) redressability by a court. *See Friends of the Earth, Inc. v. Laidlaw Env. Servs., Inc.*, 528 U.S. 167 (1999). The plaintiff does not satisfy the injury prong because she voluntarily retired from the Department in March 2025 and so is not at risk of imminent injury—here, the defendant's choice to not hire or promote her. (Def. SOF ¶ 4.) The Court thus concludes that the plaintiff is not entitled to injunctive relief.

## CONCLUSION

The defendant's motion for summary judgment [98] is granted in part and denied in part. The parties shall confer and file a status report by April 10, 2026, indicating the anticipated length of trial and any trial conflicts in September 2026 or the first quarter of 2027.

Date: March 29, 2026

_____
JEREMY C. DANIEL
United States District Judge

16